BORGES & ASSOCIATES, LLC
575 Underhill Blvd., Ste. 118
Syosset, New York 11791
Telephone: (516) 677-8200
Facsimile: (516) 677-0806
borgeslawfirm@aol.com
Wanda Borges, Esq.

Attorneys for the Official Committee of Unsecured Creditors

| In re: | ) | |
|---|---|---|
| | ) | |
| PROFESSIONAL VETERINARY | ) | CASE NO.: BK 10-82436 |
| PRODUCTS, LTD., | ) | |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | CASE NO.: BK10-82437 |
| EXACT LOGISTICS, LLC, | ) | |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | CASE NO.: BK10-82438 |
| PROCONN, LLC, | ) | |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

**OBJECTION OF THE COMMITTEE TO WELLS FARGO BANK, NATIONAL ASSOCIATION'S MOTION FOR ENTRY OF ORDER ALLOWING SECURED CLAIM AND DIRECTING PAYMENT OF SECURED CLAIM FROM SALE PROCEEDS**

The Official Committee of Unsecured Creditors in the Professional Veterinary Products, Ltd., a Nebraska Corporation, *et al.* (the "Debtors") Chapter 11 case by and through its counsel, Borges & Associates, LLC, files this Objection (the "Objection") to Wells Fargo Bank, National Association's ("Wells Fargo") Motion for Entry of Order Allowing Secured Claim and Directing Payment of Secured Claim from Sale Proceeds (the "Motion") [Docket No. 257]. In support of the Opposition, the Committee respectfully sets forth and represents as follows:

## PRELIMINARY STATEMENT

1. Under the Debtors' Revolving Note dated January 29, 2010, with an original principal amount of $40,000,000, and the Credit and Security Agreement dated January 29, 2010 amended by the First Amendment and Waiver to Credit and Security Agreement (the "Credit Agreement") dated March 15, 2010, amended by the First Forbearance and Modification Agreement dated June 30, 2010 (the "Secured Debt"), as of August 19, 2010, Wells Fargo was a claimholder of an estimated sum of $8,454,032 of which an estimated sum of $85,436 is accrued interest. The Secured Debt was secured by a security interest and lien in all of the Debtor's collateral (as defined in the Credit Agreement), and later paid by the Debtors in its entirety.

2. Wells Fargo asserts entitlement to certain fees in connection with the Credit Agreement as follows:

   a) Unused Line Fee in the amount of $4,045.69 for August 21 – 31, 2010, plus $15,423.00 for the month of September 2010.

   b) Collateral Exam Fee in the amount of $17,470.21.

   c) Termination and Line Reduction Fee in the amount of $1,200,000.

   d) Treasury Management Fees, estimated at $25,000.

   e) Interest "accrued after the commencement of the case and the reasonable fees, cost and charges referred to in 11 U.S.C. § 506(b).[1]

   f) Attorneys fees estimated to be $125,000.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought

---

[1] The Motion, ¶ 5, p. 2.

herein are 11 U.S.C. §§ 105(a), 502 and 506(b)[2], and Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Rules" or "Rule").  The Committee does not seek any relief that is set forth in Rule 7001; therefore the Objection constitutes a contested matter.

## CASE BACKGROUND

4. On August 20, 2010 (the "Petition Date"), Professional Veterinary Products, Ltd., ProConn, LLC and Exact Logistics, LLC (collectively, the "Debtors"), filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nebraska.

5. The Debtors are a leading wholesale distributor of animal health products to veterinarians and their related businesses.

6. No trustee or examiner has been appointed in this case.

7. On August 23, 2010 a Committee of Unsecured Creditors was appointed by the United States Trustee (the "Trustee") [Docket No. 36].

8. On August 26, 2010, this Court entered an order granting the Debtors' motion for the joint administration of the Debtors' cases [Docket No. 63].

## PRELIMINARY STATEMENT

9. The Committee acknowledges that Wells Fargo was oversecured as of the Petition Date of August 20, 2010 and as such is entitled to interest on its secured loan and attorneys' fees.

10. The Committee objects to the other fees requested by Wells Fargo as being excessive and improperly imposed.

---

[2] Hereinafter, references to section numbers are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

## OBJECTION TO THE WELLS FARGO MOTION
## FOR ALLOWANCE OF ITS SECURED CLAIM

11. Although the Stipulation for Secured Borrowing and Adequate Protection was entered into between the Debtors and Wells Fargo the post-petition "Lending" by Wells Fargo was illusory. There was no "new" debtor in possession financing, the DIP Facility was, in reality, nothing more than use of cash collateral to liquidate the debtor's assets until the secured loan of Wells Fargo was paid in full. All sales of inventory and accounts' receivable collections were used to satisfy the Wells Fargo debt which was paid in full on September 21, 2010, not even five weeks after the Chapter 11 Petition Date.

12. The DIP Financing was a disguised agreement for continued use of cash collateral, which will unfairly benefit the DIP Lenders at the expense of general unsecured claims if the excessive fees requested by Wells Fargo are allowed.

13. The Termination Fee requested by Wells Fargo in the sum of $1,200,000 is excessive and should not be allowed.

14. Additionally, the Committee requests that this Court find as unreasonable the attorneys' fees and expenses in an estimated amount of $125,000. Wells Fargo must submit its actual time spent on this case to the court for review. With nothing more than a simple request in an estimated amount, the Committee has no information on which to determine if the request for fees and expenses bears any semblance to actual time spent or is merely a number pulled from a hat. The attorneys' fees and expenses should be consistent to the time and efforts spent in connected with the collection and enforcement of Wells Fargo's rights under the Credit Agreement.

# ARGUMENT TO DENY THE DEBTORS' MOTION

## A. The termination fee is too high and should be reduced

15. Although the Credit Agreement states "then Borrower shall pay the Lender as liquidated damages and not as a penalty a termination fee…" a termination fee should be a reasonable amount that will compensate the other party for the efforts and resources expended and opportunities foregone while negotiating the agreement.

16. A $1.2 million early termination fee is unreasonable under the circumstances, particularly when Wells Fargo knew when it made the loan on January 29, 2010 that it was likely that the Debtors were going to liquidate.

17. A review of the Debtors' financial affairs as early as 2008 reflect that in each quarter ended December 31, 2008 through the quarter ended June 30, 2010, but one, the Debtors showed a Net Loss. Losses during the three months ended December 31, 2008 were ($950,381), which grew to cumulative losses of ($5,630,760) at December 31, 2009, and cumulative losses of ($11,471,094) from December 31, 2008 through June 30, 2010.

18. Wells Fargo entered into its Credit and Security Agreement with the Debtors on January 29, 2010 providing for a $40,000,000 revolving credit facility with a maturity date of January 31, 2013. The initial advance by Wells Fargo under the facility was $33,065,943.

19. At no time during the existence of the Wells Fargo facility did the advance by Wells Fargo exceed that amount. In fact, although the original advance in January, 2010 was $33 million, the loan balances owed to Wells Fargo for the end of the months February through August 19, 2010 were in the following approximate amounts:

> February 28, 2010 - $25,000,000
> March 31, 2010 - $26,000,000
> April 30, 2010 - $22,000,000
> May 31, 2010 - $21,000,000
> June 30, 2010 - $25,000,000

5

July 30, 2010 - $23,000,000
August 19, 2010 - $8,500,000

20. It was never actually expected that the Debtors would remain in business until January 31, 2013. Wells Fargo undertook the credit facility at a time when it was already clear that the Debtors' would either sell their businesses as "going concerns" or at liquidation. It was never realistic to believe that the Debtors' would operate a profitable business for the long term. To the contrary, any Lender would have realized that this loan would be a short-term transaction in existence long enough merely to enable a sale of the Debtors' businesses to take place and have the loan repaid.

21. The Termination and Line Reduction Fees were to be calculated as follows: (see Credit and Security Agreement Section 2.7(h).)

> *If (i) the Lender terminates the Credit Facility during a Default Period, or if (ii) the Borrower terminates or reduced the Credit Facility on a date prior to the Maturity Date, then the Borrower shall pay the Lender as liquidated damages and not as a penalty a termination fee in an amount equal to a percentage of the Maximum Line Amount (or the reduction of the Maximum Line Amount, as the case may be) calculated as follows: (A) three percent (3.0%) if the termination or reduction occurs on or before the first anniversary of the Funding Date; (B) two percent (2.0%) if the termination or reduction occurs after the first anniversary of the Funding Date, but on or before the second anniversary of the Funding Date; and (C) one percent (1.0%) if the termination or reduction occurs after the second anniversary of the Funding Date.*

22. Now—only seven months after the loan was made—Wells Fargo asks this Court to approve a $1.2 million early termination fee when little effort, time and money has been spent and few opportunities foregone. The $1.2 million early termination fee was merely a name given to an additional fee which Wells Fargo intended to collect and is not based on any actual dollar amount of the credit facility. Nor is it based on any realistic expectation that the Debtors would be borrowing from Wells Fargo even at the first anniversary of the Funding Date. The Termination Fee is not reasonable and should not be paid.

6

23. The Termination Fee was merely a vehicle to secure an additional benefit at the expense of the Debtors' estates, including the general unsecured creditors who will suffer the most if a termination fee in any amount is allowed.

24. At the most, the Termination Fee should be based on the highest post-petition balance of approximately $8 million. Nevertheless, the three percent request is unreasonable.

25. The Committee believes that there should be no Termination Fee at all awarded to Wells Fargo as it is, in reality, a fiction, and will hurt the general unsecured creditors.

**B.** **The attorneys' fees are not reasonable and should be reduced**

26. The Committee does not object to a payment of attorneys' fees and expenses. Indeed, the holder of a secured claim may collect reasonable attorneys' fees under § 506(b) if the security agreement in question so provides for such fees. In re Smith, 4 B.R. 12, 6 B.C.D. 424, 2 C.B.C.2d 77 (Bankr. E.D.N.Y. 1980).

27. The Committee does object to the reasonableness of the fees and expenses. Wells Fargo has not provided their counsel's time sheets and supporting information with regard to the legal services performed, and the Committee has no way to determine the necessity of the legal services performed. Facially, however, legal fees of $125,000 seem unreasonably high.

**C.** **The Fees requested by Wells Fargo are unreasonable and should not be approved**

28. The proposed fees, including attorneys' fees in an estimated amount, taken as a whole are completely out-of-line given the fact that there was no new funding by Wells Fargo on a post-petition basis but that Wells Fargo was paid in full from the use of cash collateral.

29. Because no new money was advanced and the loan of Wells Fargo was paid in full no more than five weeks after the Petition Date, it is unreasonable for the estate to be required to pay almost $2 million in fees solely for the use of cash collateral for a six week period of time.

WHEREFORE, the Committee respectfully requests that this Court deny the relief requested in Wells Fargo Bank's Motion for Entry of Order Allowing Secured Claim and Directing Payment of Secured Claim from Sale Proceeds.

Dated: Syosset, New York
October 20, 2010

BORGES & ASSOCIATES, LLC

Attorneys for the Official Committee of
Unsecured Creditors

By:    s/Wanda Borges
Wanda Borges
BORGES & ASSOCIATES, LLC
575 Underhill Blvd., Suite 118
Syosset, New York 11791
Tel. No.: (516) 677-8200 x225
E-mail: borgeslawfirm@aol.com